SHANNON, Judge.
The appellant, plaintiff below, brings this appeal after a jury verdict was decided adversely to him. The case arose out of an intersection collision in the City of Tampa. The plaintiff was driving east on Lafayette Street, a through street which has two lanes of moving traffic in each direction as well as a parking lane on each side of the street. He was proceeding in the center lane and was approaching a stop light which had traffic in the right hand lane backed up past Magnolia, an intersecting stop street. The cars which had stopped in that lane, however, had left a gap through which the traffic on Magnolia could proceed on to Lafayette. The defendant cab emerged from this gap just as plaintiff was proceeding past it and struck the center of plaintiff’s car on the right side. Neither driver saw the other until the in *575 stant of impact. Plaintiff testified he was traveling 10 to IS miles per hour, while other witnesses placed his speed at 20 to 30 miles per hour. Defendant’s car, which had just stopped at Lafayette Street, was traveling at a slow rate of speed. The speed limit on Lafayette was 30 miles per hour. After the impact the plaintiff’s car stopped 24 feet from the point of impact.
The plaintiff has set forth five points of law, whereas the defendant has resolved this appeal into four points. We have considered all the points and have deemed it necessary to treat only one, which, as stated by plaintiff, is “Where a through street is dual-laned for two lanes of traffic moving in the same direction, is an ordinance which prohibits the ‘overtaking’ and passing of cars ‘proceeding’ in the same direction applicable where traffic is stopped and backed up in one lane, the other remaining open for travel ?”
The trial court, over the objections of the plaintiff, admitted into evidence subsection (c) of Tampa City Ordinance 36-43:
“(c) The operator of a vehicle shall not overtake and pass another vehicle proceeding in the same direction at any steam or electric grade crossing, nor at any intersection of highways, nor shall a vehicle pass, or attempt to pass two vehicles travelling abreast.”
The plaintiff objected upon the ground that the section of the ordinance was not applicable upon streets laned for multi-file traffic where lines of traffic at intersections controlled by lights are frequently backed up in one lane but not in the other. This objection was overruled and the applicability of the Ordinance was left to the jury.
The defendant’s argument upon the applicability of subsection (c) of the ordinance was that the particular ordinance was divided into three subsections, and since subsection (a) and (b) exempted from their operation laned traffic driving but subsection (c) did not, the ordinance was worded and the city council intended that subsection (c) should apply to laned streets. For the pui'pose of pinpointing the defendant’s argument he has quoted the complete ordinance, which reads as follows:

“Overtaking and passing vehicles proceeding in the same direction.

“(a) Except upon streets marked for lane traffic, the operator of any vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the left thereof, and shall not again drive to the right side of the street until safely clear of such overtaken vehicle.
“(b) The operator of a vehicle shall not drive to the left side of the center line of a street in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety. The provision of this section shall not apply upon one-way streets or upon streets laned for traffic, in which latter event vehicles traveling in lanes shall move in the direction permitted in such lanes; provided, however, that it shall be lawful for a vehicle to overtake and pass another vehicle to the right of such overtaken vehicles upon streets laned for traffic.
“(c) The operator of a vehicle shall not overtake and pass another vehicle proceeding in the same direction at any steam or electric grade crossing, nor at any intersection of highways, nor shall a vehicle pass, or attempt to pass two vehicles traveling abreast. (Ord. 1166-A, Art. VII, § 3, 10-12-48.)”
We have studied the cases set forth in the briefs and those discovered by our own research and have come to the conclusion that the plaintiff’s objection to the admission of subsection (c) of the ordinance should have been sustained. While the *576 ordinances and statutes discussed in the various cases, infra, are worded a little differently from the one under review, these cases have uniformly held that the particular regulations forbidding one vehicle from passing another at an intersection do not apply to multi-laned highways. See Annotation 53 A.L.R.2d 866, 867.
In Magill v. George, 1952, 347 Ill.App. 6, 105 N.E.2d 808, defendant’s automobile had emerged without stopping from a side street which was controlled by a stop sign and had collided with plaintiff’s decedent who was proceeding in the left or center lane of a four-lane highway and passing a vehicle in the right lane. The Illinois statute, S.H.A. ch. 95,§ 155, as quoted in the opinion and under which the jury was instructed, provides in part:
“Limitations on overtaking on the left. * * *.
“(b) No vehicle shall, in overtaking and passing another vehicle or at any other time, be driven to the left side of the roadway under the following conditions: * * *.
“2. When approaching within 100 feet of any bridge, viaduct, or tunnel or when approaching within 100 feet of or traversing any intersection or railroad grade crossing. * *
The Illinois Appellate Court held that since the evidence did not show that decedent drove to the left of the center line or outside his own traffic lane, the instruction was faulty and could have deceived the jury into a serious misapplication of the law and that therefore the judgment for defendant must be reversed.
In Minugh v. Royal Crown Bottling Co., Tex.Civ.App.1954, 267 S.W.2d 861, 864, plaintiff was passing defendant’s truck upon a one-way two-lane highway when struck by said truck which was attempting to make a left turn from a right-hand lane. A statute, identical to F.S. § 317.30 F.S.A., which prohibits driving “ * *■ * to the left side of the roadway * * *. When approaching within one hundred (100) feet of or traversing any intersection * * *. The foregoing limitations shall not apply upon a one-way roadway.”, was held not to apply whether the highway in question were considered a four-lane highway and plaintiff did not drive “to the left of the center” of a two-lane one-way road which is expressly exempted.
A similar accident on a four-lane highway and the application of a similar regulation was considered in Wilson v. Stroh, 1950, 121 Colo. 411, 216 P.2d 999, 1000. The pertinent statute, ’35 C.S.A. c. 16, § 198,
“§ 198. Limitations on overtaking on the left. — * * *.
“(b) No vehicle shall, in overtaking and passing another vehicle or at any other time, be driven to the left side of the roadway under the following conditions :
***** *
“2. When approaching within 200 feet of any bridge, or tunnel or when approaching within 200 feet of or traversing any intersection or railroad grade crossing;”
was held to be:
“ * * * clearly intended to apply to a two-way or two-lane highway for the avoidance of traffic coming from the opposite direction. It does not make sensible application to two lanes for traffic all going in the same direction as in the case before us. * *
The court placed particular emphasis upon the terminology, “to the left side of the roadway.” It will be noted that in all three cases cited above, the regulations discussed involved this type of terminology. The ensuing cases consider regulations of the “overtake and pass” or “passing” type. Noteworthy also is the fact that Tampa’s ordinance is a strange and confusing mixture of both of these types.
*577 The accident litigated in Infantino v. Maher, 1951, 366 Pa. 633, 79 A.2d 247, 248, also involved two vehicles proceeding in the same direction upon a highway the center lanes of which were concrete, the outer lanes macadam. The court held that the highway was one with two lanes for the movement of traffic in one direction and that the passing vehicles had not violated the following statute, which, therefore, was not applicable to this case:
“The driver of a vehicle shall not overtake or pass any other vehicle, proceeding in the same direction, * * * at any intersection of highways * * * except, on a highway having two (2) or more lanes for movement of traffic in one direction, ‡ jjc £
Two vehicles proceeding in the same direction on a three-lane highway were involved in the accident from whence Topham v. Casey, 1952, 262 Wis. 580, 55 N.W.2d 892, arose. The statute involved was Sec. 85.16(6) Wis.Stats., which provides:
“It shall be unlawful for the operator of any vehicle to overtake and pass any other vehicle proceeding in the same direction at any steam, gas or electric railway grade crossing or at an intersection of highways unless permitted to do so by a traffic officer or upon highways which are properly marked by traffic lanes.”
and which the court held did not apply to a highway with properly marked • lanes.
Kaestner v. Preferred Accident Ins. Co., 1950, 257 Wis. 6, 42 N.W.2d 260, held that the same statute did not apply to a properly marked four-lane country highway.
A statute prohibiting passing at intersections was also involved in Egan v. Palmer, 1926, 221 Mo.App. 823, 293 S.W. 460, 463. The court held that the provision had no application where two cars were traveling side by side in a congested area on the proper portion of a thirty foot highway, and the overtaken car suddenly stopped without warning so that the other car unintentionally moved out in front of it and collided with a truck which had emerged from a side street without stopping. The court said:
“ * * * We do not think the statute was intended to apply to a situation of this kind. There is nothing in the law preventing automobile traffic proceeding in double file. In fact, the statute seems to contemplate this in instances of this kind. If this were not permitted, serious congestion of traffic would frequently occur in our large cities. To hold that the statute governs in the situation before us would result in requiring a person who is proceeding in double file across an intersection to drive in such a manner that he could stop so as not to move any distance out in front of the car to his side in the event the other car might, without any warning, make a sudden stop. A requirement of this kind would result in making it practically impossible for vehicles to go forward in cities in double file with any degree of speed, and, instead of double file driving, decreasing traffic congestion, it would increase it and make such driving impracticable.”
After studying these cases, which we have cited, and others, we have come to the conclusion that subsection (c) of Tampa Ordinance 36-43 must be read and interpreted together with parts (a) and (b) thereof, and that the ordinance, viewed as a whole, does not apply to multi-laned streets. If subsection (c) is read and considered by itself, it seems to apply without exception. To hold that it applies to multi-laned highways leads to very unreasonable results as pointed out in some of the cases we have cited.
We are under the view, and so hold, that the trial court was in error in admitting into evidence subsection (c) of the *578 City Ordinance 36^-3, and that the error was prejudicial to the plaintiff.
Reversed and remanded for new trial.
ALLEN, Acting C. J., and LUCKIE, CHARLES A., Associate Judge, concur.